[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13590
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 11, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20602-DLG-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANNERI IZURIETA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 11, 2012)

Before HULL, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Anneri Izurieta appeals the revocation of her probation, 18 U.S.C. § 3565(a)(2), which had been imposed for removing a seal placed on imported merchandise by customs agents, id. § 549. Izurieta argues that there is insufficient evidence that she violated a condition of her probation by importing misbranded food. 21 U.S.C. § 331(a). We affirm.

## I. BACKGROUND

In October 2010, Izurieta agreed to plead guilty to breaking a U.S. Customs seal, fastening, or mark, 18 U.S.C. § 549, in exchange for the dismissal of two charges that she had conspired to remove and that she had removed merchandise within the custody and control of customs agents, id. §§ 371, 549. A video recording of the crime depicted Izurieta in a warehouse directing her three sons, the owner of the merchandise, and another cohort to remove from a refrigeration cooler a pallet of hard cheese that had been detained by Immigration and Customs Enforcement and replacing the pallet of hard cheese with containers of soft cheese that Izurieta had brought to the warehouse. The recording also depicted Izurieta and her cohorts removing carefully the shrink wrap bearing the customs seal and reassuring the owner of the warehouse that the pallet would be "put . . . back exactly how [it was] found."

On December 9, 2010, the district court accepted Izurieta's plea and

sentenced her to two years of probation. A condition of Izurieta's probation required that she "not commit another federal, state, or local crime." During the period of probation, the district court permitted Izurieta to continue importing food products through her company, Naver Trading Corporation.

On December 23, 2010, Giddel Casadesus, a customs agent, inspected at the Port of Miami a shipment of cheese imported by Naver Trading. Although the entry paperwork declared a shipment of 240 boxes of soft cheese and dairy spread, Casadesus discovered that the shipment contained 398 boxes of hard cheese. Casadesus released the shipment "conditionally," and the shipment was transported by truck to a refrigerated warehouse. Casadesus followed the delivery truck and saw Izurieta arrive at the warehouse with one of her sons. As Casadesus "was coming into the warehouse," he saw Izurieta "sitting on the steps." After Casadesus saw that the doors to the truck had been opened and some boxes had been placed on the floor of the truck, Casadesus seized the shipment.

In March 2011, a grand jury charged Izurieta and her husband with one count of conspiring to smuggle goods into the United States, id. § 371, and six counts of smuggling into the country dairy products and bread that customs officials had earlier marked for "export[] and destr[uction] with FDA supervision," id. § 545. The indictment stated that Izurieta and her husband committed ten overt

3

acts in furtherance of the conspiracy, which included "import[ing] and caus[ing] to be imported a shipment with entry number BYV-0004551-4 . . . [o]n or about December 18, 2010," and "arriv[ing] at a refrigerated warehouse to distribute 158 boxes of dairy products from shipment BYV-0004551-4 without declaring them on entry paperwork and without making them available for an FDA examination . . . [o]n or about December 23, 2010." On May 11, 2011, a jury found Izurieta and her husband guilty of conspiring to smuggle into the United States the 398 boxes of hard cheese. The jury also found Izurieta and her husband guilty of smuggling into the country five other shipments of dairy products and bread, including a shipment of dairy products delivered in July 2010 and not destroyed by December 7, 2010.

In the meantime, Izurieta's probation officer petitioned the district court to revoke Izurieta's probation based on a new federal offense. The petition to revoke alleged that Izurieta had "committed the offense of the introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, with the intent to defraud or mislead, in violation of 21 U.S.C. § 331(a) and 333(a)(2)." At a hearing on the petition to revoke, Casadesus testified that he had inspected the shipment of cheese because, based on the size of the container and the weight of the boxes, "it almost seemed like the container was

4

half empty." Casadesus explained that the bill of lading declared a shipment of 44,000 pounds of merchandise, but that was considerably heavier than the usual weight of 240 boxes of soft cheese. On cross-examination, defense counsel suggested that Izurieta should have been permitted to amend the entry paperwork, but Casadesus responded that customs regulations allow an importer to make "minor adjustments" to correct only "minor clerical issues." Casadesus testified that Izurieta had arrived at the warehouse about 10 to 12 minutes after the delivery truck and that her husband had "showed up later." Casadesus stated that he did not see who had opened the truck, but that when he had entered the warehouse, the cargo doors of the truck had been opened and Izurieta had been sitting alone on a nearby set of steps.

Casadesus's testimony suggested that Izurieta attempted to smuggle the shipment into the United States because she knew it would not pass an inspection by the Food and Drug Administration. Casadesus testified that, in July 2010, Naver Trading received a shipment of cheese from supplier Cooproleche that customs agents seized after determining that the cheese was tainted with salmonella, and later the Administration sent a refusal notice to Naver Trading and instructed Izurieta to destroy the July shipment by December 7, 2010. Notwithstanding this problem, Izurieta again ordered cheese from Cooproleche.

5

Casadesus testified that the cheese seized on December 23, 2010, contained "very high levels of E. Coli and staph."

Izurieta's husband, Yuri, testified and assumed responsibility for the July and December shipments. Yuri said that he had received the refusal notice for the July shipment, but he did not tell Izurieta about the notice "because [he] [did]n't want her to get involved in the same situation that she had before." With respect to the December shipment, Yuri testified that he waited at the warehouse for the shipment of hard cheese to arrive and accepted the shipment. Yuri made conflicting statements about his access to the shipment of cheese. Yuri first testified that, after he accepted the shipment, he opened the doors of the delivery truck and cut the seal on the pallet of cheese, but Yuri later testified that he was denied an "opportunity to inspect the contents of the trailer." Yuri stated that Izurieta arrived at the warehouse "no more than 20 to 25 minutes after [he] opened the trailer" and "was asked to get out of the car and moved . . . [to] the back of the trailer by one of the agents." Yuri also testified that the customs regulations provided 20 days to amend entry paperwork for shipments, but neither he nor Izurieta were "allowed to make that amendment."

Izurieta also introduced an acknowledgement dated January 23, 2011, by the owner of Cooproleche, Roberto Carlos Mora Valle. Valle stated, "[b]y means of

6

[his] letter, [he] acknowledge[d] [his] responsibility in the misunderstanding and lack of communication with my client Anneri Izurieta." Valle then explained that, "[o]n December 9," he had changed the shipment to Izurieta without her knowledge or permission. Valle stated that Izurieta had not known about the modification of the shipment because Valle had encountered "communication problems due to the distance in as much as an ideal communication infrastructure does not exist where we are located, the Internet is accessed by means of a cellular service which when the signal is weak, [and] there is much difficulty in getting connected because the service fails." In closing, Valle "ask[ed] for forgiveness for the lack of communication and . . . making a decision that has affected my client Anneri Izurieta (Naver Trading) . . . [and] ask[ed] that Mrs. Izurieta be relieved of any responsibility for the inconveniences caused."

The district court revoked Izurieta's probation. The district court, "having considered the record and having heard argument of counsel, . . . [found] that [Izurieta] [had] violated the terms and conditions of Probation." The district court sentenced Izurieta to ten months of imprisonment, followed by two years of supervised release.

## II. STANDARDS OF REVIEW

"Probation revocation is entrusted to the sound discretion of the district

7

court," and "[o]nly upon a clear showing of abuse of that discretion will the district court's decision be disturbed." United States v. Robinson, 893 F.2d 1244, 1245 (11th Cir. 1990). "Further, in evaluating the decision to revoke probation, we will accept all findings of fact made by the district court unless we determine they are clearly erroneous," United States v. Holland, 874 F.2d 1470, 1473 (11th Cir. 1989), "whether those findings are based on witness testimony or on documentary evidence," Stano v. Butterworth, 51 F.3d 942, 944 (11th Cir. 1995). When "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985).

### III. DISCUSSION

Izurieta argues that there is insufficient evidence to establish that she violated a condition of her probation. Izurieta contends that she was unaware that the contents of the shipment differed from her entry paperwork and she was denied the opportunity to amend that paperwork. These arguments fail.

A district court has the authority to revoke probation whenever it finds by a preponderance of the evidence that the defendant violated a condition of her probation. Johnson v. United States, 529 U.S. 694, 700, 120 S. Ct. 1795, 1800 (2000). "'The burden of showing something by a preponderance of the evidence .

8

. . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence. . . .'" United States v. Trainor, 376 F.3d 1325, 1331 (11th Cir. 2004) (quoting Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622, 113 S. Ct. 2264, 2279 (1993)). "Evidence of a probation violation presented by the government must 'reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation; evidence that would establish guilt beyond a reasonable doubt is not required.'" Holland, 874 F.2d at 1472–73 (quoting United States v. Rice, 671 F.2d 455, 458 (11th Cir. 1982)).

Izurieta was charged with violating her probation by committing an offense punishable under the Federal Food, Drug, and Cosmetic Act. The Act prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded," 21 U.S.C. § 331(a), which if committed "with the intent to defraud or mislead," provides a punishment of "not more than three years [of imprisonment]," id. § 333(a). "A food . . . [is] deemed to be misbranded . . . [i]f . . . its labeling is false or misleading in any particular." Id. § 343(a)(1).

The district court did not clearly err when it found that Izurieta imported cheese that she knew to be misbranded. Izurieta submitted entry paperwork

9

declaring a lesser quantity and different type of cheese than what was imported. Izurieta's witnesses attributed the disparities to mistakes and to a lack of communication, but the district court was entitled to discredit that testimony. Just a few months earlier, the district court had accepted Izurieta's plea of guilty to removing from a shipment a seal designating that the shipment had been detained by Immigration and Customs Enforcement, and Izurieta's husband, Yuri, suggested that Izurieta would be likely to commit a similar misdeed. Yuri testified that he withheld from Izurieta information that one of her shipments had been refused entry "because [he] [did]n't want her to get involved in the same situation that she had before."

Although Izurieta submitted an acknowledgement in which her supplier accepted responsibility for the disparities, the district court was entitled to discredit the acknowledgement. See Stano, 51 F.3d at 944; see also Meader ex rel. Long v. United States, 881 F.2d 1056, 1061 n.12 (11th Cir. 1989) ("A fact-finder does not have to accept unrebutted evidence as correct, but can instead draw his own conclusions from such evidence."). Izurieta obtained the acknowledgement for purposes of the hearing and, although the supplier stated that he experienced "communication problems," he did not state that those problems thwarted entirely his ability to contact Izurieta. The district court reasonably could have found

unbelievable that a supplier would ship an entirely different product to a customer.

Izurieta argues that she was entitled to amend her entry paperwork, but the district court did not clearly err in rejecting that argument. Although Yuri testified that customs regulations allowed an importer 20 days to amend shipping paperwork, the district court reasonably could have found more credible Agent Casadesus's testimony that customs regulations allow an importer only to make "minor adjustments" to correct "minor clerical issues." Izurieta cites, for the first time on appeal, a regulation about correcting entry documents, but the regulation does not provide for an importer to revise entry documents to reflect that a shipment contained an entirely different product. See 19 C.F.R. § 141.64.

The district court did not abuse its discretion when it revoked Izurieta's probation. The mislabeling of the shipment, Izurieta's recent criminal activity, and the testimonies of Izurieta's husband and Agent Casadesus, established by a preponderance of the evidence that Izurieta, acting "with the intent to defraud or mislead," 21 U.S.C. § 333(a), had "deliver[ed] for introduction into interstate commerce . . . [a shipment of cheese that was] misbranded," id. § 331(a). The district court did not abuse its discretion when it determined that it was more probable than not that Izurieta committed a new crime and, in so doing, violated a condition of her probation.

11

## IV. CONCLUSION

We **AFFIRM** the revocation of Izurieta's probation.

**AFFIRMED.**